IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEROLD LIPSCOMB, | ) | |
| Plaintiff | ) | |
| v. | ) | No. 07 C 5509 |
| | ) | |
| OFFICER KNAPP, *et al.*, | ) | |
| Defendants. | ) | Judge Cole |

## MEMORANDUM OF LAW IN SUPORT OF OFFICER RAPACZ'S MOTION FOR SUMMARY JUDGMENT

Now comes defendant Officer Kevin Rapacz ("Rapacz"), by and through his attorneys, Odelson & Sterk, Ltd., and submits this Memorandum of Law in support of his Motion for Summary Judgment:

## I.  Introduction

On October 9, 2008, plaintiff Jerold Lipscomb filed a four-count Amended Complaint against defendants. (Rapacz Rule 56.1 Statement of Facts, para. 1 ("SF __") Plaintiff raised claims for alleged deprivations of his civil rights pursuant to 42 U.S.C. §1983 and for various state law violations.  Count I is a federal claim for false arrest; count II is a federal claim for "unlawful duration of confinement"; count III is a state law claim for false arrest/false imprisonment; and count IV is a state law claim for malicious prosecution. (SF 1) Rapacz, who at all relevant times was a detective for the Calumet City Police Department on assignment with the South Suburban Major Crimes Task Force ("Task Force"), is named a defendant in each of the counts.  Rapacz, however, is entitled to judgment as a matter of law on each of the claims against him because plaintiff has failed to raise any triable issue of material fact in support of his

1

purported right to recovery against Rapacz. First, the uncontested facts demonstrate that all defendants had probable cause to arrest plaintiff on October 10, 2006, after defendants discovered a hand gun in plaintiff's constructive possession during a legal search of his home the preceding day. Notably, in his Amended Complaint, plaintiff never challenges the legality of - or even mentions - the search of his home on October 9, 2006. Alternatively, even if the search and subsequent arrest were not supported by probable cause, Rapacz is entitled to qualified immunity for his actions because he reasonably believed that probable cause existed based on the facts as known to him through his fellow officers. Finally, it is undisputed that following plaintiff's arrest, Rapacz did not play any role in charging or prosecuting plaintiff, and plaintiff has failed to state any claim against Rapacz for malicious prosecution or for "unlawful duration of confinement." Rapacz is entitled to summary judgment as a matter of law.

## II. <u>Amended Complaint Allegations</u>

Plaintiff's Amended Complaint contains only the following conclusory allegations of wrongdoing directed at Rapacz (and the other defendants): defendants arrested plaintiff on October 10, 2006, "without a warrant, without provocation, and without legal justification" (Rapacz Supplemental Exhibit A, ¶ 6. ("Rap.S.Ex. A ¶__")); probable cause was lacking for plaintiff's arrest (Rap.S.Ex. A ¶ 7); following his arrest plaintiff was questioned at the Riverdale Police Department about a crime he did not commit (Rap.S.Ex. A ¶8); plaintiff was again questioned the following day about the crime (Rap.S.Ex. A ¶ 9); on the second day after his arrest he was taken before a Grand Jury to testify regarding the crime he was questioned on but he did not commit (Rap.S.Ex. A ¶10); on the third day following his arrest, plaintiff was charged with a crime and brought before the judge even though there was no probable cause to commence criminal proceedings against him (Rap.S.Ex. A ¶10-11); the criminal proceedings

2

against him were subsequently dismissed "in a manner indicative of innocence" (Rap.S.Ex. A ¶11); and defendants actions were intentional, willful and wanton, under color of law, and within the scope of their duties (Rap.S.Ex. A ¶¶12, 14, 15, 19, 24, and 28).

As noted above, nowhere in the Amended Complaint does plaintiff mention the search of his home and bedroom on October 9, 2006, or contend that that search was illegal.

### III. <u>Argument and Relevant Facts</u>

The facts developed in discovery fail to support any alleged cause against Rapacz. The consent of Herman Lipscomb to search the home, as well as plaintiff's status as a parolee, supported defendants' legal recovery of the hand gun underneath plaintiff's bed and gave defendant's probable cause to arrest him. Alternatively, Rapacz could reasonably rely on the statements of his fellow officers that they received consent to search the home and located the hand gun in plaintiff's bed with other items identifying plaintiff. Rapacz is therefore entitled to qualified immunity for any actions not supported by actual probable cause. Finally, Rapacz played no role in charging plaintiff or prosecuting him, and he cannot be liable for malicious prosecution or failing to bring plaintiff for a timely hearing.

### A. **Summary judgment standard.**

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must demonstrate the absence of any triable issue. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The moving party may do this by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325. The non-moving party then has the burden of presenting specific facts to show that there is a

genuine issue of material fact. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

To state a cognizable claim under 42 U.S.C. §1983, a plaintiff must establish that (1) a person acting under color of state law engaged in conduct that (2) deprived the plaintiff of rights, privileges, or immunities secured by the Constitution and laws of the United States. 42 U.S.C. §1983; <u>Starnes v. Capital Cities Media, Inc.</u>, 39 F.3d 1394, 1396 (7th Cir. 1994).

With respect to his claims against Rapacz, plaintiff cannot meet these standards, and Rapacz is entitled to judgment as a matter of law.

### B. Probable cause existed for plaintiff's arrest and defeating his claims.

The facts contained in the record contradict plaintiff's vague conclusion that defendants' lacked probable cause to arrest him. Plaintiff's constructive possession of a hand gun was a violation of Illinois law. When defendants located a hand gun in plaintiff's bed, with documents identifying plaintiff, that evidence provided defendants with a reasonable belief that plaintiff had committed a criminal offense. Such circumstances defeat plaintiff's federal and state law claims for false arrest, "length of detention," and malicious prosecution against Rapacz.

The Fourth Amendment prohibits a police officer from arresting a citizen unless probable cause exists. <u>Rogers v. Powell</u>, 120 F.3d 446, 452 (3rd Cir. 1997). Probable cause to arrest a citizen exists when the facts and circumstances within the arresting officer's knowledge are sufficient to support a reasonable person's belief that an offense has been or is being committed by the citizen. <u>Id.</u> at 453. The existence of probable cause to arrest depends on the requirements of the applicable state criminal law. <u>Pourghoraishi v. Flying J, Inc.</u>, 449 F.3d 751, 761 (7th Cir. 2006).

In this case, plaintiff's possession of any firearm, as a convicted felon, was a violation of Illinois law. Section 24-1.1 of the Illinois Criminal Code of 1961 states, in relevant part:

> "(a) It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24-1 of this Act or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1.

Additionally, plaintiff's possession of a firearm was a violation of the conditions of his parole. Section 3-3-7(a) of the Illinois Unified Code of Corrections states in relevant part:

> "(a) The conditions of parole or mandatory supervised release shall be such as the Prisoner Review Board deems necessary to assist the subject in leading a law-abiding life. The conditions of every parole and mandatory supervised release are that the subject:
> (1) not violate any criminal statute of any jurisdiction during the parole or release term;
> (2) refrain from possessing a firearm or other dangerous weapon[.]"
> 730 ILCS 5/3-3-7(a)(1)-(2).

"The existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution." Schertz v. Waupaca County, 875 F.2d 578, 582 (7th Cir. 1989), citing Mark v. Furay, 769 F.2d 1266, 1269 (7th Cir. 1985). Similarly, under Illinois law, if an arrest is supported by probable cause, then no action for false arrest can exist. Lappin v. Costello, 174 Ill.Dec. 114, 120 (Ill.App. 4th Dist. 1992).

Applying these principles to the present case, it is clear that probable cause existed to arrest plaintiff on October 10, 2006. Accordingly, plaintiff has no viable cause of action against Rapacz. Defendants' investigation into the murder of Metra police officer Thomas Cook led them to legally uncover a hand gun under plaintiff's bed. (SF 13, 42-43) The circumstances of that discovery justified defendants' reasonable belief that plaintiff, who was on parole for a felony conviction, was in violation of the conditions of his parole and the Criminal Code.

5

Although no warrant was issued for plaintiff's arrest, the circumstances, even if later proved incorrect, justified plaintiff's arrest without a warrant.

The recovery of the gun in plaintiff's bed was legal because it was made with his great grandfather's consent to search the home. (SF 27-28) While looking for Lazeric Lipscomb as part of their investigation into the Cook murder, defendants were led to plaintiff's house in Hazel Crest. Upon their arrival, Daley and then Knapp went to the rear of the house and encountered Herman Lipscomb, Sr., plaintiff's great-grandfather, who was a resident of the house. (SF 26) They identified themselves as officers looking for Lazeric and asked if anyone was inside the house. After Herman indicated that Lazeric might be in the house, Knapp obtained a consent to search form. Herman signed the form gave his consent to search the house. (SF 26-27) A warrant to enter the house was not necessary. With Rapacz positioned the entire time near the front door of the house, the other defendants entered the house from the rear with Herman and began to look through the house for Lazeric. (SF 33-38) Through an open door to one of the back bedrooms, one of the officers saw the butt of a hand gun sticking out from underneath a mattress. (SF 43) The bedroom belonged to plaintiff and his uncle, both residents of the house. (SF 47) Located near the hand gun and also underneath the mattress was a SWAP identification card and traffic violation ticket with plaintiff's name on them. (SF 47) Additionally, the hand gun had an altered or damaged serial number. (SF 47) Defendants recovered this evidence, and left the house. (SF 49, 51) Later it was discovered that plaintiff was on parole for a prior felony conviction. The fact that the hand gun was in his house and under his bed was a violation of his parole and the Criminal Code. (SF 52-53) Based on this information, defendants planned to return to the house the following day to locate plaintiff and Lazeric. (SF 58)

Under these circumstances, it was reasonable for defendants to believe that plaintiff had committed a violation. Although plaintiff stated at this deposition that he never possessed the hand gun or knew anything about its origin, he does not deny in the Amended Complaint that defendants found the hand gun under his mattress. There is nothing in the record to contradict defendants' statements that they, in fact, found the hand gun there with documents identifying plaintiff. At the time of plaintiff's arrest, even if plaintiff had denied ownership of the hand gun, the officers were not required to believe him in light of the evidence they had uncovered. Additionally, even if it was later established that it was not plaintiff's hand gun – a fact that has not been established - its mere presence in plaintiff's house (in any location) justified plaintiff's arrest for a potential Criminal Code and parole violation. For probable cause to exist, defendants did not need absolute proof that it was plaintiff's hand gun; it was enough that they found it, after being permitted entry into the house, in plaintiff's constructive possession.

Additionally, plaintiff's vague allegations that, following his arrest, he was questioned twice about another crime is irrelevant to the existence of probable cause for his arrest. Obviously, the Cook murder was the focus of the Task Force's investigation, but that focus did not affect defendants' reasonable basis to believe plaintiff had committed a violation of his parole. Even assuming *arguendo* that finding the hand gun was a pretext for questioning plaintiff about the Cook murder, that would not defeat probable cause for his arrest. A legitimate arrest is not rendered invalid by the fact that the basis for the arrest was even pretextual. Rogers, 120 F.3d at 453, citing Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996). Neither the allegations of the Amended Complaint nor the factual record contradict the validity of the consent to enter the house or the location of the hand gun under plaintiff's mattress. There is no triable issue of material fact as to these matters, and

Rapacz possessed a reasonable belief that plaintiff had committed a violation justifying his arrest and defeating his claims.

C. **Regardless of whether consent was given, plaintiff had no expectation of privacy in his bedroom as a parolee.**

Even if this court were to find that an issue of triable fact existed as to the validity of Herman Lipscomb's consent to search his home, the search was still legal because plaintiff, as a parolee, did not possess a Fourth Amendment privacy interest in his bedroom. Although, generally, the Fourth Amendment requires a warrant supported by probable cause for a search to be considered reasonable, courts have held warrants as unnecessary in cases of probationers and parolees. People v. Wilson, 228 Ill.2d 35, 40, 885 N.E.2d 1033 (2008), citing United States v. Knight, 534 U.S. 112, 122, 122 S.Ct. 587, 593, 151 L.Ed.2d 497, 507 (2001); Samson v. California, 547 U.S. 843, 856-58, 126 S.Ct. 2193, 2202, 165 L.Ed.2d 250, 262 (2006); and People v. Moss, 217 Ill.2d 511, 534, 842 N.E.2d 699 (2005).

In Illinois, under the state's Mandatory Supervised Release ("MSR") system, a prisoner eligible for parole, must sign an agreement setting forth the conditions of his release from the Department of Corrections. 730 ILCS 5/3-3-7(c); Wilson, 228 Ill.2d at 47. Parolees remain in the custody of the Department of Corrections for their entire parole period. 720 ILCS 5/3-14-2(a).

The Illinois Supreme Court's decision in Wilson is controlling here. In that case, the court considered whether a "warrantless, suspicionless search of a parolee is prohibited by the [F]ourth [A]mendment." Wilson, 228 Ill.2d at 36. Under the facts there, a parole officer, having received an anonymous tip that the parolee was violating his parole agreement, took two police officers to search the parolee and his residence. The officers did not obtain a warrant. The

parolees' mother or grandmother allowed the officers to enter the apartment where the parolee lived. In the parolees' presence, but without obtaining his permission to enter his apartment bedroom, the officers went inside and found drugs. Id. at 38-39. The circuit court denied the parolee's motion to suppress the uncovered evidence, but the Illinois Appellate Court reversed that decision. The Illinois Supreme Court, however, reinstated the circuit court's ruling, finding that the parolee's status and the plain language of his parole agreement, requiring him to consent to searches of his person and residence, "reduced his expectation of privacy in his residence to a level that society would not recognize as legitimate." Id. at 52. Declaring that it was bound by the reasoning set forth in Samson v. California, the court held that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee. Id. at 52, citing Samson, 547 U.S. at 857, 126 S.Ct. at 2202, 165 L.Ed.2d at 262.

Here, as in Wilson, plaintiff was a parolee (SF 8) and required, as a condition of his parole, to consent to searches of both his person and residence. These standard conditions of parole and MSR agreements have been codified in Illinois' Unified Code of Corrections ("Code"). Section 3-3-7(a) of the Code provides, in relevant part, "The conditions of every parole and [MSR] are that the subject: * * * (10) consent to a search of his or her person, property, or residence under his or her control." 730 ILCS 5/3-3-7(a). Furthermore, section 3-3-9(a) of the Code states, "[i]f prior to expiration or termination of the term of parole or [MSR], a person violates a * * * condition of parole * * *, the [Prisoner Review] Board may: * * * (3) revoke the parole or [MSR] and reconfine the person * * *." 730 ILCS 5/3-3-9(a). Therefore, plaintiff possessed no legitimate expectation of privacy in his residence. Both he and his residence were subject to search, at the risk of violating his parole conditions, at any time. Neither a warrant nor even a suspicion of wrongdoing was required for the search to be valid.

Having no basis to contest the search, plaintiff cannot state a claim for false arrest or malicious prosecution against Rapacz.

**D. Rapacz is entitled to qualified immunity because he reasonably relied on the statements of his fellow officers in participating in plaintiff's arrest.**

Even assuming for purposes of summary judgment that there was no probable cause to arrest plaintiff and that he retained some degree of privacy in his bedroom, Rapacz reasonably relied on the statements and actions of his fellow officers that probable cause did exist, and he is therefore entitled to qualified immunity for any role that he played in plaintiff's arrest. Based on the facts of record, there is no evidence to suggest that Rapacz violated plaintiff's rights or should have been aware that plaintiff's arrest was not supported by probable cause. Based on the circumstances as Rapacz observed them on October 9 and 10, 2006, Herman Lipscomb had voluntarily given consent to search his house and a firearm with a altered serial number was found with plaintiff's identification under his mattress.

Qualified Immunity protects "government officials performing discretionary functions * * * from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). According to the United States Supreme Court, the reasoning of this doctrine is that:

> "reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruptions of government and permit the resolution of many insubstantial claims on summary judgment." Id.

Whether an officer is entitled to qualified immunity is a legal question. Rogers v. Powell, 120 F.3d 446, 455 (3rd Cir. 1997).

An arresting officer may rely on a fellow officer's statement that probable cause exists if the statement made by the fellow officer is supported by actual facts that satisfy the probable cause standard. Id. The United States Supreme Court stated in United States v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), that the lawfulness of a seizure made in reliance on fellow officers' statements:

> "turns on whether the officers who issued the [statements] possessed probable cause to make the arrest. It does not turn on whether those relying on the [statements] were themselves aware of the specific facts which led their colleagues to seek their assistance." Hensley, 105 S.Ct. at 681.

In Rogers v. Powell, the Third Circuit Court of Appeals held that the actions of a police officer, acting in reliance on what may have been the flawed conclusions of a fellow officer, were still reasonable and protected by the doctrine of qualified immunity. Rogers, 120 F.3d at 455. The court reviewed, in relevant part, whether there were issues of triable fact with respect to an ulawful arrest claim against several police officers. The police officers had received summary judgment in the circuit court. Id. at 449. Although on appeal, the court agreed that the arrest at issue was, in fact, "unlawful" for lack of probable cause, the court then addressed, on an alternative basis, whether any of the officers were entitled to qualified immunity. Id. at 454. As to one of the officers, the court found that his participation in the arrest of the defendant was based entirely on a fellow officer's clear and unambiguous (although ultimately incorrect) statement that an arrest warrant for the defendant existed in another county. The circumstances were such that the officer had no reason to question the statement, and the court held that the officer's participation in the arrest was objectively reasonable as a matter of law. Applying the doctrine of qualified immunity to that officer, the court affirmed summary judgment in his favor. Id. at 456.

11

Relying on <u>Rogers v. Powell</u>, the Seventh Circuit Court of Appeals, in <u>Duran v. Sirgedas</u>, 240 Fed.App. 104, 115 (7th Cir. 2007), similarly applied qualified immunity to a police sergeant who arrived at a disturbance in progress and assisted with an arrest of the plaintiff.

In the present case, from Rapacz's point-of-view of his fellow officers' actions, there was nothing ambiguous regarding Herman Lipscomb's apparent consent to search the house and the discovery of the hand gun under plaintiff's mattress. Like the officers in <u>Rogers</u> and <u>Duran</u>, Rapacz reasonably acted in reliance on his fellow officers (and the surrounding circumstances) and believed there was probable cause to arrest plaintiff on October 10, 2006. Accordingly, he is entitled to qualified immunity against plaintiff's claims.

As to the October 9 search that uncovered the hand gun, Rapacz was not present when Herman Lipscomb's consent was requested. (SF 31) Rapacz could neither see or hear Herman's exchange with his fellow officers. (SF 32) When he arrived with his fellow officers, Rapacz went to the front door and remained there while Knapp and Daley encountered Herman behind the house. (SF 25-26) Even if plaintiff could raise an issue of fact as to whether or not Herman's consent was given or voluntary, Rapacz was not, and could not have been, aware of any problems with the consent. By the time that Rapacz next saw his fellow officers inside the house, they had already entered the house from the back with Herman. (SF 35-37) The other officers had a signed consent form. There are no facts that Herman ever protested the search while in Rapacz's view inside the house. In fact, Herman remained cooperative and silent while the search was conducted. (SF 40-41) Additionally, there is no evidence that Rapacz had conspired with the other officers to commit an illegal search. Rapacz was justified in relying on the signed consent form and the lack of any observed objection from Herman while the search was conducted.

12

Furthermore, Rapacz did not participate in actually searching the house. At all times, he remained near the front door. (SF 38-39) He never entered or even looked into the back bedroom where the hand gun was found. (SF 44-45) His fellow officers reported seeing the butt of the hand gun in plaintiff's room through an open door way. (SF 43) From Rapacz's point-of-view, the officers had entered the bedroom and recovered the hand gun and plaintiff's pieces of identification from under the mattress. He observed one of the officers emerge from the room with the hand gun and identification. (SF 46-47) There is no evidence establishing that Rapacz should have doubted the statements of his fellow officers. There are no allegations or evidence that Rapacz conspired to plant evidence on plaintiff. Later that day or early on October 10, 2006, the officers learned that plaintiff was on parole for a felony conviction and that his possession of a hand gun, even in his residence, was a violation of his parole conditions and Illinois law. (SF 54) Because Rapacz at that point had no reason to doubt the legality of the search, it was objectively reasonable for him to return to plaintiff's house and to assist in the arrest the following day.

Plaintiff can offer no facts suggesting that Rapacz possessed other information undermining the reasonableness of his actions. Rapacz is therefore entitled to qualified immunity.

E. **Rapacz played no role in charging or prosecuting plaintiff and cannot be liable for malicious prosecution or failure to arrange a prompt hearing for plaintiff.**

Finally, Rapacz cannot be liable to plaintiff for malicious prosecution under Illinois law or for holding plaintiff too long before affording him a hearing. There is no evidence that he took any action, muchless an improper one, with respect to plaintiff's continued detention and prosecution. Rapacz had no involvement in plaintiff's case following plaintiff's interrogation

13

after his arrest on October 10. There is no issue of triable fact as to Rapacz's perceived role in plaintiff's prosecution, and he is entitled to judgment on this claim as well.

Under Illinois law, in order to state a claim for malicious prosecution, a plaintiff must show that: (1) the defendant commenced or continued an original criminal or civil proceeding; (2) the proceeding terminated in the plaintiff's favor; (3) the defendant instituted the proceeding without probable cause; (4) the defendant acted maliciously in initiating or continuing the proceeding; and (5) the plaintiff was injured. Reed v. City of Chicago, 77 F.3d 1049, 1051 (7th Cir. 1996). "Absent allegations that a police officer committed an improper act after arresting the plaintiff, an officer is not liable for malicious prosecution[.]" Collins v. Johnson, 1999 WL 311699, *4 (N.D.Ill.), citing Reed, 77 F.3d at 1053-54. Accordingly, a plaintiff is required to allege and establish facts that remove the case from the "realm of effectuating an arrest to the realm of initiating and pursuing a criminal prosecution." Id. The Seventh Circuit has noted that a police officer's role is not the initiation and pursuit of a criminal prosecution. Washington v. Summerville, 127 F.3d 552, 559-60 (7th Cir. 1997). "In other words, a plaintiff must allege that the defendants 'covered up exculpatory evidence or testified untruthfully,' or asserted 'improper influence or [made] knowing misstatements.'" Id.

There is no evidence in the record that Rapacz was involved in plaintiff's prosecution. Plaintiff has not developed any evidence demonstrating that Rapacz took some action beyond the arrest. Accordingly, he cannot be held liable for malicious prosecution.

Although Rapacz was present for plaintiff's interrogation at the Riverdale Police Department following his arrest on October 10, he never took any further action in plaintiff's case. (SF 73, 77) Plaintiff maintains that the same officers who questioned him on October 10 also questioned him the following day, but, even finding in plaintiff's favor as to this minor

14

factual discrepancy, there is still no evidence that Rapacz was involved in the prosecution. Rapacz stated that he was not consulted regarding charging plaintiff with a particular crime, testing the evidence, continuing to hold plaintiff following the interrogation, or bringing him to court. (SF 75-78) There is no evidence in the record that he participated in any of these events. It is uncontroverted that Rapacz never completed a report of the arrest or interrogation or testified in court. In short, plaintiff has failed to show that plaintiff did anything beyond the initial arrest. There are no allegations or evidence that Rapacz covered up exculpatory evidence or made any misstatement or lie in an effort to initiate or continue a prosecution against plaintiff. Accordingly, there is no basis to find Rapacz liable for malicious prosecution or to find that he had any personal involvement in arranging to bring plaintiff before a court. As with the other counts, Rapacz is entitled to summary judgment.

## IV. Conclusion

For all of the foregoing reasons, defendant Kevin Rapacz is entitled to summary judgment on Counts I through IV of the Amended Complaint as a matter of law.

Respectfully submitted,

*/s/ Michael J. Hayes, Jr.*

_____
Officer Kevin Rapacz


Michael J. McGrath
Richard F. Bruen, Jr.
Michael J. Hayes, Jr.
ODELSON & STERK, LTD.
3318 West 95th Street
Evergreen Park, IL 60805
708-424-5678