3510-923 GER:sd

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEROLD LIPSCOMB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Court No. 07 C 5509 |
| | ) | |
| OFFICER KNAPP, et al., | ) | Magistrate Judge Cole |
| | ) | |
| Defendants. | ) | |

**DEFENDANT JAMES KNAPP'S REPLY IN SUPPORT
OF HIS MOTION FOR SUMMARY JUDGMENT**

Defendant James Knapp (hereafter "Defendant Knapp" or "Knapp"), through his attorneys, hereby submits the following as his reply in support of his motion for summary judgment:

**I.      Plaintiff's concessions and admissions eliminate several of the claims he had pleaded.**

Before addressing the substantive arguments Plaintiff has presented in response to Defendant Knapp's summary judgment motion, the Court should first take into account Plaintiff's concessions and admissions, which significantly narrow the bases upon which he seeks to hold Knapp liable.

**A.      Plaintiff has dropped two of his claims.**

In Section VI of his Response, Plaintiff states he is "no longer pursuing" against Knapp his §1983 claim for unlawful duration of confinement or his state common law malicious prosecution claim. Those claims should, therefore, be dismissed with prejudice, and any statement contained in Plaintiff's response that might otherwise be construed as an attempt to raise a genuine issue on either claim must be disregarded as immaterial.

**B.      Plaintiff has admitted that Knapp did not arrest him on October 10, 2006.**

With the elimination of the claims for unlawful duration of confinement and malicious prosecution, the only claims remaining against Knapp are that he (together with the remaining individual Defendants) arrested the Plaintiff on October 10, 2006, in violation of Plaintiff's federal constitutional and state common law rights (see Amended Complaint, Counts I and III).

However, contrary to the wording contained in his pleadings, Plaintiff has admitted, in responding to the present motion, that Knapp was not one of the officers who physically arrested him on October 10. In his response memorandum, for example, Plaintiff states at page 20: "While it may be true that Knapp did not physically arrest the Plaintiff . . ." Furthermore, in his Response to Defendant Knapp's Statement of Material Facts, the Plaintiff has unqualifiedly admitted: (1) Defendant Knapp was not on Task Force duty on October 10, 2006 (see Response #19); (2) Knapp did not go to 16973 Western Avenue in Hazel Crest on that date (Response #20); (3) Plaintiff was arrested at or near that address on that date (Response #22); and (4) Knapp did not learn of Plaintiff's arrest until October 11, 2006 (Response #24).

While it is true, as Plaintiff argues and as Knapp had readily acknowledged in his memorandum of law, that there are circumstances where an officer can be held liable for false arrest even though he did not physically arrest the claimant,[1] it is noteworthy for purposes of this case that Plaintiff never pleaded any claim against Knapp based on circumstances other than Knapp's alleged personal participation, on October 10 and afterwards, in Plaintiff's arrest (see Complaint and Amended Complaint, ¶¶ 6-11, 14). Plaintiff is, therefore, flat-out wrong when he

---

[1] It is not true, however, that Knapp ever "invited the Court" to take the position that "only those that actually physically arrest an individual may be held liable for an arrest under Section 1983. . . ," as Plaintiff has erroneously urged at page 20 of his response brief. It is evident from the structure and content of Defendant's memorandum of law that Knapp utilized a process-of-elimination approach in arguing his entitlement to judgment as a matter of law. By demonstrating that there is no genuine issue whether Knapp physically arrested the Plaintiff (a point that Plaintiff now concedes), Knapp sought to eliminate *one possible basis* for liability. But Knapp did not, as Plaintiff contends, attempt to steer the Court toward any incorrect proposition of law.

attempts to justify the position he has taken in response, a position that is entirely dependent on events that happened, or allegedly happened, on October 9, by stating: "The allegations against Knapp are not new, *and they were alleged in the initial complaint* – a fact not contested by Knapp. . ." (see Response at p. 23, emphasis added). Quite to the contrary, Knapp contests Plaintiff's assertion. The initial Complaint (as well as the Amended Complaint, for that matter) does not mention October 9 or anything that any Task Force member did, or did not do, on that date. For that reason, as Knapp specifically argued in his memorandum of law, the events of October 9 are neither material nor relevant to the question whether he can be held liable for depriving Plaintiff of his constitutional rights *in the manner Plaintiff has actually and specifically alleged.*[2] As a result, Plaintiff has, in essence, admitted away the only false arrest claims he brought before this Court.

### C. Plaintiff has admitted he is not asserting or pursing any claim against Knapp for an allegedly illegal search.

Regardless whether this Court agrees with Knapp that the events of October 9 are entirely immaterial to Plaintiff's false arrest claims, Plaintiff's response makes this much certain – Jerold Lipscomb is not asserting or pursuing any claim against this Defendant for illegally searching the Lipscomb residence on October 9. Therefore, to the extent anything occurring October 9 is deemed material, there would still be no genuine issue regarding any Fourth Amendment unlawful search claim, since there is no such claim.

Defendant had pointed out in his memorandum of law that he was present at the Lipscomb residence on October 9 (rather than October 10) and participated in a premises search that date (see Memorandum of Law at pp. 3-4). Knapp thereby established he had no face-to-face interaction with the Plaintiff, since Jerold Lipscomb was not home at the time. Furthermore,

---

[2] Defendant addresses Plaintiff's apparent effort to amend his pleadings via his response to the present motion in Section II.E. of this reply brief.

Knapp was personally involved with the Lipscomb portion of the Thomas Cook murder investigation only that day. He was not on duty the next day when other Task Force members traveled to that location and arrested the Plaintiff.

Plaintiff has devoted a significant portion of his response brief to a discussion of the events that transpired on October 9, even going so far as to argue, at least against Co-Defendant Rapacz, that the search conducted that day was illegal (see Response at p. 11). With regard to Knapp, however, Plaintiff's response underscores what seemed apparent from the face of his original and first amended complaints – Plaintiff is not asserting or pursuing any claim against Knapp *for an illegal search* (see Response at p. 23: "The Plaintiff's claim against Knapp is not for the illegal search . . .").

Though Knapp does not concede Plaintiff's conclusion that the search was illegal, the more salient point for purposes of this motion, as Knapp had argued in his memorandum, is that there is no genuine issue of *material* fact posed by the search, since Plaintiff is making no claim against Knapp for an illegal search. Plaintiff could have easily (and timely) added such a claim. For whatever reason, however, he did not. His failure to do so renders his discussion of the search in response to Co-Defendant Rapacz's motion immaterial with regard to Knapp's motion.

## II. Plaintiff's Response fails to demonstrate any genuine material issues to prevent summary judgment in Knapp's favor on Plaintiff's false arrest claims.

### A. Plaintiff cannot create genuine material issues by misstating or mischaracterizing Knapp's argument.

On page 5 of his response brief, Plaintiff leads off his argument against Co-Defendant Rapacz's summary judgment motion by stating: "Both Rapacz and Knapp argue, in their respective memorandums, that the Plaintiff's Fourth Amendment false arrest claim must fail because there was probable cause to arrest him." That statement is untrue. Only Rapacz raised

probable cause *as a summary judgment argument.* Plaintiff cannot, in essence, create a *genuine* material issue against Knapp by first misstating or mischaracterizing Knapp's actual arguments, and then raising counterarguments against them. Plaintiff's effort to manufacture genuine material issues in this manner must be disregarded.

**B.    Plaintiff fails to raise any genuine issue whether Knapp had any role or participation in Plaintiff's arrest or detention on and after October 10, 2006.**

As shown above, Plaintiff has now admitted that Defendant Knapp did not physically arrest him. Since Plaintiff's pleadings had only alleged events occurring on and after October 10, 2006, and since the undisputed facts of record establish that Knapp played no role and did not participate in any part of Plaintiff's arrest and subsequent detention on and after that date, Defendant had included the following assertion in his Rule 56.1 Statement of Material Facts:

> 25.    On and after October 10, 2006, Defendant Knapp had no role or participation in Plaintiff's arrest or subsequent detention.

In responding, Plaintiff objected to this assertion (see Plaintiff's Response to Defendant Knapp's Statement of Material Facts, #25). His objections, however, lack merit.

To begin with, Plaintiff claims the statement does not assert facts. It most certainly does. It begins with the phrase, "On and after October 10 . . ." This particular time frame is a factual component of the overall assertion. The balance of the assertion states that Knapp "had no role or participation in Plaintiff's arrest or detention." This, too, is a factual assertion that naturally follows from two other facts Plaintiff has already admitted, namely that Knapp was not on Task Force duty on the date of Plaintiff's arrest, and Knapp was not present at the time and place of that arrest. Furthermore, this assertion is based on the exact wording of a question Plaintiff's counsel put to Knapp at his deposition (see Knapp deposition at p. 67):

> Q:    Okay. After you left that shift, did you have any other role or participation in Jerold Lipscomb's arrest or subsequent detention?

A:    Nothing at all.

It is apparent from the questioning that preceded this exchange that the shift to which counsel was referring was Knapp's shift on October 9. Consequently, Plaintiff's objection is totally unfounded, since he is objecting to his own counsel's choice of words while deposing Knapp.

Second, Plaintiff argues that Knapp failed to cite *legal* authority to support this assertion. No need to. The assertion is part of Defendant's Rule 56.1 statement of material facts, not his memorandum of law. Rule 56.1 only requires the proponent of the statement to support it by citing to the facts of record. Knapp did so. Knapp has confined his discussion of legal authority where it belongs – in his memorandum of law (and this reply brief).

Third, Plaintiffs objection goes well beyond the wording of Knapp's assertion, which begins, once again, with the specific time frame *on and after October 10*. Plaintiff argues that "Knapp's actions formed the basis of the 10/10/06 arrest." However, the "actions" he has discussed in his response brief occurred *before* October 10. Thus, Plaintiff's objection does not squarely address Defendant's factual assertion as worded. Instead, Plaintiff inappropriately and unfairly attempts to re-draft Defendant's proposition to incorporate irrelevant, immaterial matter.

Finally, when viewed in the context of Plaintiff's overall response to Knapp's motion, his objection to this specific assertion is seriously undermined by his own decision to discontinue his claims against Knapp for unlawful duration of confinement and malicious prosecution, claims that were entirely dependent on events occurring on or after October 10.

For the foregoing reasons, Plaintiff's objections should be overruled, and his request to strike this particular statement of fact should be denied. Since he has not presented any testimony or evidence tending to contradict it, the statement should stand as admitted.

### C. Plaintiff fails to raise any genuine issue whether Knapp directed other Task Force members to arrest the Plaintiff.

In his memorandum of law, Knapp acknowledged the general proposition that a police officer's personal responsibility for a constitutional deprivation can be established by proof that he either directed the conduct causing the constitutional violation, or that it occurred with his knowledge or consent (see Memorandum of Law at p. 2). With regard to the first of these two alternatives, Knapp has demonstrated there is no evidence that he directed any other officer or Task Force member to arrest Plaintiff.

Plaintiff's response to this argument is somewhat confusing. Though he cites *Sanville v. McCaughtry*, the same case Knapp had relied on to support the general proposition mentioned above, Plaintiff then argues that "[t]he issue is not whether [Knapp] told somebody to arrest the Plaintiff," and concludes ". . . therefore it does not matter that he did not direct another officer to arrest the Plaintiff . . ." (see Response at p. 20). To the contrary, it does matter. Telling another officer to make an arrest *could* be one form of *directing* that action. Knapp's point is that this did not happen. Plaintiff's first-line response of just brushing this aside because "it does not matter" is utterly non-responsive.

Despite the brush-off, Plaintiff nonetheless tries to manufacture a genuine issue whether Knapp told other Task Force personnel to arrest Lipscomb. In his response to Defendant's statement of material fact #21, Plaintiff takes issue with Knapp's cite to Co-Defendant Daley's testimony, arguing that Daley only stated he did not remember Knapp telling him to make the arrest. But Daley did not testify that Knapp in fact told him to arrest the Plaintiff, and Plaintiff's response does not demonstrate otherwise. Thus, Plaintiff has no basis to suggest that Daley's testimony contradicts Knapp and thereby creates a genuine material issue on this point.

Furthermore, Plaintiff has not pointed to any other testimony rebutting Knapp's direct

assertion that he did not tell other Task Force members to arrest Jerold Lipscomb if they saw him. The Task Force command level personnel did not contradict him. Neither did any of the Co-Defendants. In fact, Plaintiff has asserted, as part of his Facts in Response to the Defendants' Motions for Summary Judgment that "[t]he decision to arrest Jerold on October 10, 2006 *was made by Rapacz and Daley*." (See Facts in Response, ¶25 (emphasis added).)

Since he cannot demonstrate any direct rebuttal, Plaintiff argues instead that when Knapp told his supervisors on October 9 he had found a gun, he was, in effect, telling or directing them to have the Plaintiff arrested. This contention, however, does not squarely address Knapp's factual assertion. Simply informing one's supervisors that a gun was found is not the same as telling them to make or authorize an arrest. Plaintiff's position ignores the fact (a fact he has admitted — see response to factual assertion #6) that the Task Force uses a chain of command. When Knapp reported the gun on October 9, he was reporting *up the chain of command to his superiors*. He was not telling or directing them what to do about it. Had Plaintiff been able to factually demonstrate that this is precisely what Knapp did notwithstanding the chain of command, he might be justified in claiming that a genuine material issue exists. However, Plaintiff's Response points to no such countervailing testimony or evidence. Furthermore, Plaintiff does not cite any case law to support his fanciful notion that when Knapp reported up the chain of command, he was really ordering, commanding, instructing or telling — in other words, *directing* — his superiors what to do.

Plaintiff's denial of Defendant's factual assertion #21 also relies upon the Lipscomb family members' denial of knowledge about the gun. The Lipscombs' collective denial, however, is totally irrelevant to whether Knapp directed any other officer to go out and make an arrest, and should thus be disregarded.

8

Plaintiff's next point, namely that Knapp "falsely informed[ed] his supervisors that a gun was found" and that this was "tantamount to directing the arrest of the Plaintiff given that he was on parole," suffers several infirmities. To begin with, Plaintiff has not demonstrated any basis for accusing Knapp of providing false information that *a* gun was found. The family members' professed lack of knowledge concerning the gun does not, in and of itself, negate the fact there was a gun. Herman Lipscomb admitted to seeing a gun before the officers departed from the residence on October 9 (see Herman Lipscomb deposition at pp. 24-25; see also transcript of hearing, Docket Document #85-2 at p.33 of 201 (Plaintiff Exhibit 3)). Furthermore, the gun was produced as an exhibit at the court hearing before Judge Donnelly on March 19, 2007 (see transcript of hearing, Docket Document #85-2 at p.51 of 201). Thus, Plaintiff has no basis for suggesting, as he does, that the gun was entirely fictitious. Besides, in opposing Knapp's motion, Plaintiff must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In any event, none of this establishes that Knapp directed any of his superiors what to do about the gun. More to the point, none of this demonstrates that Knapp directed them, or anyone else for that matter, to arrest Jerold Lipscomb.

**D.    Plaintiff fails to raise any genuine issue demonstrating that the arrest occurred with Knapp's knowledge or consent.**

The second alternative basis for holding a non-arresting officer liable for false arrest requires a showing that the arrest occurred with his knowledge or consent. Here, Plaintiff has failed to demonstrate either. Instead, Plaintiff has admitted Knapp was not on duty on October

10, did not go to the Lipscomb residence that day, and did not learn of the Plaintiff's arrest until October 11. Plaintiff has pointed to no other testimony or evidence establishing that Knapp knew of the arrest as it occurred on October 10. Furthermore, Plaintiff has presented absolutely no testimony or evidence showing that Knapp consented to the arrest. Reporting one's search-related findings to one's superiors is not the same as consenting to an arrest being made at some later point. Absent any other relevant testimony, there is simply no genuine material issue demonstrated.

> **E.    Plaintiff's argument regarding Knapp's alleged "intentional falsehoods and misrepresentations" must be disregarded as immaterial, since Plaintiff has never asserted such a claim, and is now time-barred from doing so.**

After admitting that Knapp was not one of the arresting officers, and then failing to demonstrate that Knapp either (1) directed others to make the arrest, (2) had knowledge of the arrest, or (3) consented to the arrest, Plaintiff devotes a significant portion of his response brief to arguing that "Knapp's intentional falsehoods and misrepresentations caused the arrest" (see Response at pp. 20-23). That argument, however, must be disregarded as immaterial because *Plaintiff never brought such a claim.* Furthermore, it is now too late for him to do so.

In both the original and amended complaints, the only conduct Plaintiff factually attributes to Knapp is that he, as well as the remaining Defendant officers: (1) came to the Plaintiff's home and arrested him on October 10, 2006 (see both Complaints, ¶¶ 6, 8); (2) transported Plaintiff to the Riverdale Police Department and questioned him about a crime he did not commit (Complaints, ¶ 8); (3) placed Plaintiff in a holding cell (Complaints, ¶ 8); (4) questioned Plaintiff again the next day before returning him to a cell (Complaints, ¶ 9); (5) transported him to a Grand Jury to testify about a matter other than that for which he was arrested (Complaints, ¶ 10); (6) returned him to Riverdale and charged him with a crime

(Complaints, ¶ 10); (7) commenced criminal proceedings against him (Complaints, ¶ 10); and (8) brought him before a Court the third day following the arrest (Complaints, ¶ 11). Neither Complaint alleges any facts relating to the events of October 9. In addition, neither Complaint sets forth any facts regarding any "intentional falsehoods and misrepresentations" made by Knapp in an effort to "defraud [ ] . . . his fellow Defendants and his supervisors . . ." (see Response at p. 22).

If, as Plaintiff now argues, the gist of his claim against Knapp is fraud, it was incumbent upon Plaintiff to state in his pleadings, with particularity, the circumstances constituting that fraud. See Fed.R.Civ.P. 9(b). Plaintiff never did so, and thus never brought a fraud claim against Knapp.

Furthermore, if Plaintiff *intended* to carve out a separate fraud claim against Knapp, he had plenty of time to do so. Plaintiff's counsel had, after all, taken Knapp's deposition on June 26, 2008, leaving him approximately 3-1/2 months to bring such a claim. Interestingly, on the two-year anniversary date of Knapp's alleged "intentional falsehoods," Plaintiff did amend his Complaint, but only to add a new Defendant – Lieutenant Cook – to his unlawful duration of confinement claim in Count II. Plaintiff did not include any new factual allegations or claims against Knapp. Plaintiff has never amended his Complaint in any other way or at any other time, nor has he sought leave to do so, even in his response to the present motion. Instead, he insists that his allegations against Knapp (presumably referring to his new allegations of "intentional falsehoods and misrepresentations") are not new and were alleged in his initial Complaint (see Response at p. 23). But they clearly were not. The Complaint says nothing at all about Knapp's conduct on October 9, nor about any so-called "intentional falsehoods or misrepresentations."

Plaintiff's attempt to switch gears in his summary judgment response is similar to the

plaintiff's failed argument in *Palmer v. Monroe County Sheriff*, 378 F.Supp.2d 284 (W.D.N.Y. 2005). In that case, the plaintiffs wanted to amend their complaint to include a claim under the Sixth and Fourteenth Amendments that the county sheriff violated their right to a fair trial by fabricating evidence. Earlier in the case, the plaintiffs had argued, in seeking the court's reconsideration of a partial grant of summary judgment for the defendant, that when the district court dismissed their cause of action entitled "Intentional and/or Reckless Infliction of Emotional Distress as a Constitutional Deprivation," it erroneously dismissed a Fourteenth Amendment claim for denial of a fair trial, based on defendant's fabrication of evidence, that was supposedly embodied within that same claim. The district judge, however, stated that he "need not entertain such a claim as *no such claim is contained in the Complaint*." *Id.* at 287 (emphasis added). When the plaintiffs later moved to amend their complaint to include their fabrication of evidence claim, the court again rejected plaintiff's contention that their original complaint clearly stated a Fourteenth Amendment fabrication of evidence/right to fair trial violation claim, noting that the complaint did not contain any reference to a "right to fair trial" or "fabrication of evidence," as would be expected if there was such a claim. *Id.* at 291. Moreover, as the Court observed, the original complaint was brought against all defendants, not just the defendant against whom the plaintiffs sought to assert their fair trial claim.

In our case, Plaintiff sued all the individual Defendants for arresting him on October 10. He did not single out Knapp for any particularized claim, such as "intentional falsehoods and misrepresentations," or "defrauding" his supervisors and/or fellow Defendants.

Plaintiff's response is not, in and of itself, an amended pleading. Nor does it request leave to amend. It simply argues a non-existent claim. But even if his response was construed as a request for leave to amend, that request should nonetheless be rejected as futile, since

12

Plaintiff's new claim would be time-barred under the applicable two-year limitations statute for §1983 claims brought in Illinois. Plaintiff's only hope would be if the amendment related back to his original filing, pursuant to Rule 15 of the Federal Rules of Civil Procedure. But it does not, and cannot.

"In recent years, federal courts have analyzed the specific conduct of the opponent upon which the party relies to enforce his claim or defense and if it relates to the same general wrong or conduct complained of in the original pleading." *Cruz v. City of Camden*, 898 F. Supp.1100, 1117 (D.N.J. 1995). The original and proposed pleadings "should be analyzed to determine whether they share common operative facts so as to insure that the defendants had fair notice of the transaction, occurrence or conduct that was called into question." *Id.* If the amendment to a pleading "does not change the factual basis of the action but merely corrects or clarifies the allegations in the original complaint, the amendment will relate back to the original complaint." *Id.* However, "[r]elation back is denied those amendments which are based on entirely different facts, transactions, and occurrences." *Marsh v. Coleman Company, Inc.*, 774 F. Supp. 608, 612 (D. Kan. 1991), citing *Holmes v. Greyhound Lines, Inc.* 757 F.2d 1563, 1566 (5th Cir. 1985); see also *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993) ("When new or distinct conduct, transactions, or occurrences are alleged as ground for recovery, there is no relation back, and recovery under the amended complaint is barred by limitations if it was untimely filed.")

In the present case, assuming *arguendo* that Plaintiff is seeking leave to amend his complaint so as to justify his argument, his request must be rejected, since he is now alleging distinct conduct, transactions, or occurrences that were nowhere to be found in his original pleading. Furthermore, he has failed to bring this new claim within the applicable limitations period.

**F.** **Plaintiff's attempt to recast his state law false arrest claim as one based on "intentional misrepresentations" must also be rejected, since he never brought such a claim.**

For much the same reasons as discussed in the preceding section, Plaintiff cannot, at this juncture, re-cast his state law false arrest claim into a "fraudulent misrepresentation" claim.

Interestingly, in arguing against Knapp's claim to immunity under the Illinois Tort Immunity Act, Plaintiff emphasizes he is "not seeking to hold Knapp responsible for acts by the other Defendants," but only "for his acts" (see Response at p. 26). The fatal flaw in this argument is that Plaintiff has never brought any state law claim against Knapp "for his [alleged] acts" of fraud and intentional misrepresentation. Since Plaintiff is now time-barred from doing so, and since he has completely failed to demonstrate any genuine material issue with regard to the state law false arrest claim he did bring, Defendant is entitled to summary judgment on this claim as well as Plaintiff's federal constitutional false arrest claim.

## III.    Conclusion

For the foregoing reasons, together with those contained in his motion, memorandum of law, and other supporting materials, Defendant James Knapp respectfully requests the Court to enter summary judgment in his favor and against the Plaintiff.

Respectfully submitted,

_____/s/ Gregory E. Rogus_____
Attorney for DEFENDANT JAMES KNAPP

Gregory E. Rogus (ARDC No. 3128154)
Segal McCambridge Singer & Mahoney, Ltd.
233 South Wacker Drive, Suite 5500
Chicago, IL 60606
(312) 645-7800
(312) 645-7711 Fax
1342900